```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/27/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LASHAWN ALLADIN,

               Plaintiff,

      -v-

PARAMOUNT MANAGEMENT, LLC,
ALEX EKDESHMAN, Individually, and
MORRIS L. RICHTER, Individually,

               Defendants
------------------------------------------------------------------------X

12 Civ. 4309 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

    Plaintiff Lashawn Alladin brings claims against Defendants Paramount Management, LLC ("Paramount"), Alex Ekdeshman, and Morris L. Richter for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq*. In addition, Alladin claims that Defendants discriminated against her because of her race, in violation of Title 42, United States Code, Section 1981 and the New York City Human Rights Law, N.Y.C. Admin. Code, §§ 8-101 *et. seq*. Alladin now moves for summary judgment on all claims. For the reasons that follow, Alladin's motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts, taken from the pleadings and the admissible materials submitted by the parties, are viewed in the light most favorable to Defendants as the non-moving parties.

    On January 16, 2012, Alladin began working for Paramount (*See* Compl. ¶ 22; Answer ¶ 22; Alladin Aff. ¶ 1), a currency-trading company owned by Ekdeshman (Ekdeshman Dep. 7:12-13, 8:25-9:5). For the first two weeks of her employment, Alladin worked as an unpaid

"intern," performing secretarial tasks. (*See* Alladin Aff. ¶ 2; Ekdeshman Dep. 65:12-66:6; Rose Aff. Ex. B (containing all of Alladin's paystubs, which do not evidence a payment for the first two weeks of her employment)). Thereafter, she was "hired" and paid a flat rate of $300.00 per week. (*See* Alladin Dep. 43:5-12; Ekdeshman Dep. 66:2-7; Rose Aff. Ex. B). Paramount did not keep time records (*See* Ekdeshman Dep. 34:2-7), and Alladin's pay did not vary based on the hours she worked (*Id.* at 34:11-14; Rose Aff. Ex. B). The parties agree that Alladin worked more than forty hours a week, but disagree about how much more. (*See* Pl.'s Rule 56.1 Statement of Material Facts Not in Dispute ("Pl.'s 56.1 Statement") ¶¶ 7-8; Defs.' Responses to Pl.'s Statement of Material Facts ("Defs.' Responses") ¶¶ 7-8).

Alladin, who is African American, contends that during her employment she was repeatedly subjected to racist comments and discrimination based on her race. For example, she alleges that Paramount employees "would constantly use the word 'Nigger' around" her; that the Chief Financial Officer of Paramount stated that "[b]lack people never take the time to educate themselves on anything good"; and that she heard someone comment that "'[t]he reason the economy is so bad is because a Black person is President" and that "'[b]lack people can't run the country.'" (Compl. ¶¶ 28, 32). Defendants dispute these allegations. (Answer ¶¶ 28, 32). For example, Ekdeshman testified at his deposition that he never made any racist statements and never heard anyone else at Paramount make such statements. (*See* Ekdeshman Dep. 71:13-72:19; 73:2-75:25, 77:15-78:25, 91:24-92:7, 92:25-93:8).

Alladin's employment was terminated on March 28, 2012. (*See* Ekdeshman Dep. 84:14-23; Rose Aff. Ex. B). Alladin alleges that her termination was based on race. (Compl. ¶ 36). She contends that her manager told her the reason she was fired was because Ekdeshman

"want[ed] to hire his own kind." (Alladin Dep. 58:25-59:6). Defendants, however, contend that Alladin was terminated due to poor job performance. (Ekdeshman Dep. 34:15-35:4, 62:2-63:4).

Alladin commenced this action on June 1, 2012. (Docket No. 1). Paramount and Ekdeshman filed an Answer and appeared in the case. Richter has not appeared; there is some question about whether he was properly served, and Aladdin has taken no steps to pursue the case against him or seek entry of a default judgment.[1] Following discovery, Aladdin moved for summary judgment on all claims. (Docket No. 17). Defendants Paramount and Ekdeshman jointly opposed Alladin's motion, but their memorandum of law contests only Alladin's discrimination claims. (Docket No. 22). They make no argument with respect to Alladin's FLSA and NYLL claims. (*Id.*). Plaintiff did not file a reply brief.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter

---

[1] The proof of service indicates that the summons and complaint were left for Richter with Ekdeshman — who, not incidentally, testified at his deposition that Richter no longer worked for Paramount and that he did not know where Richter lives. (Docket No. 3; Ekdeshman Dep. 36:23-24; 57: 13-16). *See* Fed. R. Civ. P. (4)(e) (providing that service may be properly effected by personally delivering a copy of the summons and complaint to the defendant; leaving a copy of these documents at the defendant's dwelling with someone who resides there; delivering a copy of these documents to an agent of the defendant authorized to receive service; or following the relevant state law, in this case New York, for serving a summons); N.Y.C.P.L.R. § 308 (providing, in relevant part, that service may be effected by delivering the summons to the defendant; leaving the summons with someone at the defendant's business or dwelling and mailing it to the defendant; or delivering the summons to an agent authorized to receive service).

of law." (internal quotation marks omitted)).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the burden of demonstrating the absence of such a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).[2]

---

[2]  Although Rule 56 of the Federal Rules of Civil Procedure was amended and reorganized in 2010, the advisory committee notes indicate that "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

B.  **The FLSA and NYLL Claims**

The FLSA provides that "[e]very employer shall pay to each of his employees" a minimum wage, which for the time period at issue in this case is $7.25 per hour.  29 U.S.C. § 206(a).  In addition, the Act provides that, with certain exceptions not relevant here, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Both provisions are limited to employees who are "engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a)(1).  Thus, in order to prove Defendants are liable for unpaid wages and failure to pay overtime, Alladin must demonstrate that: (1) she had an employer-employee relationship with Defendants; (2) Defendants failed to pay her minimum wage and overtime; and (3) she or Paramount was engaged in commerce or in the production of goods for commerce.  *See Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007).  The commerce requirement aside, the requirements for minimum wage and overtime compensation under the NYLL are, to the extent relevant here, the same as those under the FLSA.  *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009).

   1.  **Employer-Employee Relationship**

Defendants admit in their Answer that, "at all times relevant" to the lawsuit, Alladin "was an employee of" Paramount.  (Compl. ¶ 9; Answer ¶ 9).  This admission constitutes a fact that must be considered "conclusive[ly]" established for purposes of this action.  *See W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121-22 (2d Cir. 1990); *see also Gibbs v. CIGNA Corp.*, 440

F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation."). In any event, the record firmly supports the conclusion that Aladdin was an employee, even during the two-week period in which she was identified as an "intern." During that period, Alladin was tasked with sending packages, answering phones, making coffee, running errands, and performing other administrative tasks. (*See* Alladin Aff. ¶ 1; Alladin Dep. 27:21-28:18; Ekdeshman Dep. 64:25-65:5; Compl. ¶ 22; Answer ¶ 22). There is no evidence, however, that she received training or education beyond any on-the-job training given to employees or that she received any benefit beyond those that any Paramount employee would receive. (*See* Ekdeshman Dep. 65:21-25). Nor could Paramount dispute that it received an "immediate advantage" from Alladin's services or that Paramount was the "primary beneficiar[y]" of her work. *Glatt v. Fox Searchlight Pictures Inc.*, 11 Civ. 6784 (WHP), 2013 WL 2495140, at *13 (S.D.N.Y. June 11, 2013). These facts demonstrate that Alladin was indeed an employee of Paramount under the FLSA at all times relevant to this case. *See id.* at *10-*14; U.S. Dep't of Labor Fact Sheet # 71 (April 2010).

Ekdeshman, however, did not directly admit that he was Alladin's employer. (*See* Compl. ¶ 18; Answer ¶ 18). During Alladin's employment Ekdeshman was the owner and Chief Executive Officer of Paramount (Compl. ¶ 10; Answer ¶ 10; Ekdeshman Dep. 7:12-15). But a person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company. *Irizarry v. Catsimatidis*, — F.3d —, 2013 WL 3388443, at *6 (2d Cir. July 9, 2013). To be an employer within the meaning of the FLSA, an individual must have "the power to control the workers in question." *Id.* at *4 (internal quotation marks omitted). The record demonstrates that Ekdeshman had this power with respect to Alladin.

6

At his deposition, Ekdeshman testified that he "[o]versee[s] all the operations of the business," including "handling human resources issues." (Ekdeshman Dep. 8:2-3, 11:10-12). Further, in the Answer, Ekdeshman admitted that he was Alladin's "supervisor and/or had supervisory authority over" her (Compl. ¶ 11; Answer ¶ 11); that he "had the power to, and was responsible for, determining [her] wages" (Compl. ¶ 15; Answer ¶ 15); and that he "had the power to, and did in fact, establish the terms of . . . Alladin's employment, including [her] schedule and rate of pay" (Compl. ¶ 16; Answer ¶ 16). The record is thus clear that Ekdeshman possesses "authority over management, supervision and oversight of [Paramount's] affairs in general" and that he "exercise[d] . . . direct control over" Alladin; accordingly, he too was her employer for purposes of the FLSA. *See Irizarry*, 2013 WL 3388443, at *10.

### 2. Failure to Pay Minimum Wage and Overtime

To establish liability for unpaid wages or overtime, Alladin must demonstrate that she "performed work for which [s]he was not properly compensated and that [her] employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Where "an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Id.* at 362 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). An employee may "meet this burden through estimates based on his [or her] own recollection." *Id.* "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* (internal quotation marks omitted).

Ekdeshman testified that Paramount did not keep any records of Alladin's hours. (Ekdeshman Dep. 34:2-4; *see also id.* at 34:5-7 (Ekdeshman testifying that Paramount does not keep any time records)). Further, Defendants do not dispute Alladin's assertion that she "worked for Defendants from January 16, 2012 until February 3, 2012" — that is, for two weeks — "without receiving any pay." (*See* Pl.'s 56.1 Statement ¶ 15; Defs.' Responses ¶ 15). The record supports this assertion. Alladin submitted an affidavit testifying that she "was not paid for any work performed in the first two weeks of [her] employment" at Paramount. (Alladin Aff. ¶ 2). And the earliest paystub contained within "the complete paystub record" Alladin submitted to the Court is dated February 10, 2012, one week after she contends she began to be paid. (*See* Rose Aff. ¶ 8; *Id.* Ex. B). Ekdeshman, for his part, admitted in his deposition that Alladin's work was initially unpaid. (*See* Ekdeshman Dep. 65:12-66:6). And while he testified that he thought Paramount began paying Alladin "earlier than" twelve days after she began working there, he did not specify — and did not seem to know — the date on which she first began to be paid. (*Id.* 66:2-6). It is thus "just and reasonable" to infer from the record that Defendants failed entirely to pay Alladin for the first two weeks she was employed at Paramount, a conclusion Defendants, as noted, concede.

With respect to Alladin's claim for overtime compensation, the record is clear that she was paid $300.00 per week regardless of how many hours she worked. Every paystub — with the exception of the final one, which was for a partial week of work (Alladin Dep. 59:9-15) — was for exactly $300.00. (Rose Aff. Ex. B). And Ekdeshman testified that Alladin's pay did not "change depending on how many hours she worked." (Ekdeshman Dep. 34:11-14). Defendants concede that Alladin "worked more than forty (40) hours in a given week." (*See* Pl.'s 56.1 Statement ¶ 7; Defs.' Responses ¶ 7). This concession is supported by the record. Both Alladin

8

and Ekdeshman testified that she worked more than forty hours per week. (*See* Alladin Dep. 31:10-12; Ekdeshman Dep. 56:24-57:6). Defendants dispute, however, Alladin's contention that she "worked fifty (50) hours per week on a regular basis." (*See* Pl.'s 56.1 Statement ¶ 8; Defs.' Responses ¶ 8). While the record demonstrates that Alladin worked more than forty hours per week, there is conflicting evidence with respect to precisely how many hours Alladin worked. Alladin testified in her affidavit that she "was regularly required to work 50 hours per week." (Alladin Aff. ¶ 14). But she testified in her deposition that her "hours of employment at Paramount" were "7:30 to 5:00" (Alladin Dep. 31:10-12), which would amount to 47.5 hours per week, assuming she did not take an unpaid lunch break. Accordingly, while there can be no dispute that Alladin worked overtime for which she was not paid, the current record is insufficient to calculate the amount of overtime worked.

### 3. Participation in Commerce

As noted, the FLSA applies only where there is a nexus to commerce. The Act defines commerce to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203. Further, an enterprise is "engaged in commerce" for purposes of the FLSA if it (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) has an "annual gross volume of sales made or business done [that] is not less than $ 500,000." *Id.* § 203(s)(1)(A); *accord Seeman v. Gracie Gardens Owners Corp.*, 794 F. Supp. 2d 476, 484 n.2 (S.D.N.Y. 2011). The current record is insufficient to establish that Alladin herself was "engaged in commerce or the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a)(1). The same is true for Paramount. Ekdeshman testified that, at the time of

9

his deposition, Paramount had $200,000 in its trading account.  (*See* Ekdeshman Dep. 29:17-30:6).  But the evidence does not make clear what the annual volume of trading done by Paramount is, let alone whether such business exceeds $500,000 a year.

### 4. Liquidated Damages

Under the FLSA, in addition to recovering the amount of his or her unpaid wages, a plaintiff is entitled to "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer demonstrates "to the satisfaction of the court that the act or omission giving rise to" its failure to comply with the FLSA "was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the" law, *id.* § 260.  The employer's burden "is a difficult one to meet, however, and double damages are the norm, single damages the exception."  *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks omitted).  Under the NYLL, an employee is entitled to liquidated damages in an amount "equal to one hundred percent of the total" unpaid wages, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).

Here, there can be no dispute that Defendants' failure to comply with the FLSA and NYLL was not in "good faith" within the meaning of those statutes.  Defendants admit that they did not keep any records of Alladin's hours and, in fact, that they made no effort whatsoever to comply with the record-keeping requirements of the FLSA and NYLL, 29 U.S.C. § 211(c); N.Y. Lab. Law § 661.  (*See* Ekdeshman Dep. 34:2-7).  They also concede that Alladin worked for two weeks without receiving any compensation at all (*see* Pl.'s 56.1 Statement ¶ 15; Defs.' Responses ¶ 15), and that she subsequently received the same wages regardless of the hours she worked, even though she worked more than forty hours a week  (*see* Pl.'s 56.1 Statement ¶¶ 2, 7;

Defs.' Responses ¶¶ 2, 7). "Such conduct, considered as a whole, demonstrates not a good faith effort to comply with the [FLSA and NYLL's] requirements, but instead a complete disregard for them." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) (holding that similar conduct evidenced a lack of good faith).

District courts disagree about whether a plaintiff can recover liquidated damages under both the FLSA and the NYLL. *Compare, e.g.*, *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y.2008), *with Chun Jie Yin v. Kim*, 07 Civ. 1236 (DLI), 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008). The majority view is that because liquidated damages under the FLSA are compensatory and those under the NYLL are punitive, recovery under both statutes is permissible. *See Palacios v. Z & G Distributors, Inc.*, 11 Civ. 2538 (AT) (FM), 2013 WL 4007590, at *3 (S.D.N.Y. Aug. 6, 2013) (collecting cases); *Yu G. Ke*, 595 F. Supp. 2d at 262. This Court agrees with the majority.

Therefore, Alladin is entitled to liquidated damages under the NYLL and, if at trial she demonstrates that Paramount was engaged in commerce, to liquidated damages under the FLSA as well.

*****

In short, Alladin has demonstrated that, throughout the relevant time period, she was an employee of Paramount; that Paramount and Ekdeshman were her employers; that she was unpaid for the first two weeks of her employment; that she worked overtime for which she was also unpaid; and that she is entitled to liquidated damages under the NYLL and, if the FLSA applies, under that Act as well. Summary judgment is therefore granted on those issues. Despite Defendants' failure to oppose Aladdin's summary judgment motion on her FLSA and NYLL claims, the record is insufficient to demonstrate the amount of overtime Alladin worked for

11

which she was unpaid or that Paramount was engaged in commerce for purposes of the FLSA. Accordingly, summary judgment is denied with respect to those issues.

## C. Discrimination Claims

Alladin also alleges that Defendants discriminated against her based on her race by requiring her to change her name to one that did not sound African American; regularly subjecting her to racist comments; and ultimately terminating her because she is African American. There are plainly material disputes of fact with respect to these contentions. For example, Alladin testified that Ekdeshman directed her manager, who was African American (*see* Ekdeshman Dep. 57:12; Alladin Dep. 38:24-39:4-6), to tell her that she "would have to change [her first] name to Laura," because "Lashawn was too much of a black name and it would be bad for doing business." (Alladin Dep. 35:13-19, 36:4-5). Ekdeshman, however, testified that none of his clients had ever expressed a desire to work with a white employee rather than a person of color and that nobody had ever stated or implied that "Lashawn Alladin's name sounded too ethnic." (Ekdeshman Dep. 43:10-44:2). Furthermore, he stated that was unaware "of any facts relating to" Alladin being asked to change her name and that he assumed that she did so simply because she had wanted to do so. (*Id.* at 42:20-43:7, 68:22-69:23).

Additionally, Alladin contends that racist statements were "regularly heard in the office." (Pl.'s 56.1 Statement ¶ 13; *see, e.g.*, Alladin Aff. ¶¶ 6-11; Alladin Dep. 52:13-53:5, 57:12-17). But Ekdeshman testified that he never made any racist statements and never heard anyone else at Paramount make such statements. (*See* Ekdeshman Dep. 71:13-72:19; 73:2-75:25, 77:15-78:25, 91:24-92:7, 92:25-93:8). Indeed, Ekdeshman testified that one of the people who Alladin alleges made racist statements never spoke to Alladin and did not even work for Paramount. (*See id.* at 70:2-13, 70:16-22).

Finally, Alladin alleges that her employment was terminated was because of her race. (*See* Compl. ¶ 26). At her deposition, Alladin testified that her manager told her that she was being fired because Ekdeshman "want[ed] to hire his own kind." (Alladin Dep. 59:4-6, 59:21-24). Ekdeshman testified, however, that it was Alladin's manager, not Ekdeshman, who made the decision to terminate Alladin, and that she was fired not because of her race but because of poor job performance. (Ekdeshman Dep. 34:15-35:4, 62:2-63:4). In particular, Ekdeshman claimed that Paramount lost $10,000 because of a package Alladin incorrectly sent and that the spelling and phrasing of Alladin's emails were inadequate. (*Id.* at 62:11-13, 62:23-63:4). These material disputes of fact preclude the entry of summary judgment in Aladdin's favor.

## CONCLUSION

With respect to Defendants Paramount and Ekdeshman, Plaintiff's motion for summary judgment is GRANTED on the issues of whether Alladin was an employee of Paramount; whether Paramount and Ekdeshman were her employers; whether she was unpaid for the first two weeks of her employment; whether she worked overtime for which she was also unpaid; and whether she is entitled to liquidated damages under the NYLL and, if the FLSA applies, under that Act as well. Plaintiff's motion is DENIED with respect to the amount of overtime Alladin worked for which she was unpaid and the question of whether Paramount was engaged in commerce for purposes of the FLSA. The motion is also DENIED with respect to Plaintiff's employment discrimination claims against Paramount and Ekdeshman.

In accordance with Paragraph 5(A) of the Court's Individual Rules and Practices for Civil Cases and Paragraph 14 of the Civil Case Management Plan (Docket No. 9), the parties shall submit a proposed joint pretrial order to the Court by thirty days from the date of this Opinion. In addition, in accordance with Paragraphs 5(B) and 5(C) of the Court's Individual Rules and

Practices for Civil Cases, each party shall file and serve along with the joint pretrial order all required pretrial filings, including motions addressing any evidentiary issues or other matters that should be resolved *in limine*; and joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions.

Given Plaintiff's failure to pursue the case or seek entry of a default judgment against Richter, Plaintiff is ordered to show cause in writing — no later than **September 6, 2013** — why the case should not be dismissed against Richter for failure to prosecute. Any opposition to Plaintiff's efforts to show cause shall be filed by **September 20, 2013**. If Plaintiff fails to show good cause by **September 6, 2013**, the case will be dismissed against Richter without further notice to the parties.

The Clerk of Court is directed to terminate the motion for summary judgment. (Docket No. 17).

SO ORDERED.

Dated: August 27, 2013
      New York, New York

                                             JESSE M. FURMAN
                                          United States District Judge